COPY

DENNIS K. BURKE
United States Attorney
District of Arizona

ALISON S. BACHUS
Assistant U.S. Attorney
Two Renaissance Square
40 N. Central Avenue, Suite 1200
Phoenix, Arizona 85004-4408
Arizona State Bar No. 023884
Telephone (602) 514-7500
alison.bachus@usdoj.gov

# UNITED STATES DISTRICT COURT

## DISTRICT OF ARIZONA

IN THE MATTER OF THE
APPLICATION OF THE UNITED
STATES OF AMERICA FOR AN ORDER
AUTHORIZING THE INSTALLATION
AND USE OF A MOBILE TRACKING
DEVICE AND A PEN REGISTER, TRAP
AND TRACE DEVICE, INCLUDING
CALLER IDENTIFICATION FEATURE
ON CELLULAR TELEPHONE
NUMBERS (928) 205-8558 AND (928)
358-2242

No. 10 - 612mB

**APPLICATION FOR TRACKING
DEVICE WARRANT PURSUANT
TO TITLE 18 U.S.C. § 3117 AND
RULE 41, AND APPLICATION FOR
INSTALLATION AND USE OF A
PEN REGISTER, TRAP AND
TRACE DEVICE**

**(Filed Under Seal)**

Alison S. Bachus, an attorney of the United States Department of Justice, hereby submits to this Court an application for a Warrant pursuant to Title 18, United States Code, Section 3117 and Fed. R. Crim. P. 41, authorizing the installation and use of a mobile tracking device on cellular telephone numbers (928) 205-8558 and (928) 358-2242 (the "target cellular telephone numbers"). She also applies for an Order pursuant to 18 U.S.C. §§ 3122, 3123, and 3127(3) and (4) authorizing the installation and use of a pen register, trap and trace device, and caller identification service on cellular telephone numbers (928) 205-8558 and (928) 358-2242. In support of this application, she states the following:

1.　　Applicant is an "attorney for the government" as defined in Fed. R. Crim. P. 1(b)(1)(B).

2.　　Applicant certifies that the Federal Bureau of Investigation (FBI) is conducting a criminal investigation of possible violations of 18 U.S.C. Sections 2113(a) and (d) and 924(c)(1)(A), as set forth in the attached affidavit by FBI Special Agent Lance Leising. It

To File

1:1151067.62 ...000894
DV CASE... 19

1   is believed that targets of the investigation are utilizing cellular telephones with the numbers
2   (928) 205-8558 and (928) 358-2242.  The cellular telephone numbers (928) 205-8558 and
3   (928) 358-2242 are Verizon cellular telephone numbers.  It is believed that targets of the
4   investigation are using these cellular telephone numbers in furtherance of the subject
5   offenses.  As described in the attached Affidavit by Special Agent Leising, there is probable
6   cause to believe that cellular telephone number location information is relevant and material
7   to the ongoing criminal investigation regarding the aforementioned offenses.

8          3.    Applicant further requests that the Court issue a Warrant authorizing any
9   installation of a mobile tracking device within 10 calendar days of the date of the Warrant
10  during daytime hours.  Applicant requests that the authorization to install, operate, and
11  monitor the mobile tracking device terminate no later than 45 days from the date of this
12  Warrant.

13         4.    The United States seeks cellular telephone location information on an ongoing
14  and real-time basis, including but not limited to identifying the specific nearest cell sites
15  activated or accessed by the target cellular telephone number, and identifying the signal
16  direction and strength of communications between the activated cell site(s) and the target
17  cellular telephone number.   Used in this manner, cellular telephone number location
18  information will generate data to track the general location of the user of the target cellular
19  telephone number.  As such, the United States seeks authorization to use a mobile tracking
20  device.  With this Application, the United States does not seek the content of any wire or
21  electronic communications.

22         5.  Applicant further requests that the authorization given be intended to apply not
23  only to the target telephone listed above, but also any changed telephone numbers assigned
24  to the instrument bearing the same ESN/IMSI/UFMI as the target telephone number within
25  the forty-five (45) day period.

26         6. Applicant further requests that, pursuant to 18 U.S.C. § 3123, that this Court order
27  that agents of the Federal Bureau of Investigation may direct Verizon Wireless to install a
28

2

000835

1    pen register to register numbers dialed or pulsed from the above described telephone
2    numbers, to record the date and time of such dialings or pulsings, and to record the length
3    of time the telephone receiver in question is off the hook for incoming or outgoing calls for
4    a period of 45 days; and a trap and trace device, and caller identification on  the above
5    described telephone number to capture the incoming electronic impulses which identify the
6    originating number of a wire or electronic communication and the date, time, and duration
7    of such incoming impulses for a period of 45 days.

8        7.  Applicant further requests that, pursuant to 18 U.S.C. §§ 2703(c)(1)(B) and (d),
9    that this Court order that agents of the Federal Bureau of Investigation may install and use
10   a pen register and/or trap and trace device and/or Caller ID/Caller ID Deluxe, as they may
11   elect, without geographical restrictions, to capture and register outgoing and/or incoming
12   dialed numbers or electronic or other impulses which identify the outgoing and/or incoming .
13   originating numbers (call-identifying information) of wire or electronic communications
14   dialed or pulsed from or to the target telephones, to record the length of time the target
15   telephones are off the hook for incoming or outgoing wire or electronic communications, to
16   be provided call detail record, cell site information to include sector and/or face of the cell
17   tower, timing advance or precision location information, as well as specific paging/traffic RF
18   channels needed to determine the cellular network's registration of the target telephones for
19   a period of 45 days; and such service provider shall initiate a signal to determine the location
20   of the subject's mobile device on the service provider's network or with such other reference
21   points as may be reasonably available and at such intervals and times as directed by the law
22   enforcement agent serving this Court's Order;

23       8.  Applicant further requests that the Court order Verizon Wireless and its agents and
24   employees not to disclose to the subscriber, or any other person, the existence of this Warrant
25   or of this investigation unless otherwise ordered by the Court, because there is reason to
26   believe that such notification will jeopardize the investigation.

27
28

000836

1    Based on these specific and particular facts, the applicant submits that there is
2    probable cause to authorize the installation and use of a mobile tracking device.
3    **WHEREFORE**, it is respectfully requested that the Court grant a Warrant (1)
4    authorizing any installation of a mobile tracking device within 10 calendar days of the date
5    of the Warrant during daytime hours for the target cellular telephone numbers ((928) 205-
6    8558 and (928) 358-2242), (2) directing Verizon Wireless to disclose, on an ongoing and
7    real-time basis, the location of cell site and sector/face data (physical address) at call
8    origination (for outbound calls), call termination (for incoming calls) and, if reasonably
9    available, during the progress of a call over the target telephones, (3) to determine the general
10   location of the user of the target cellular telephone numbers, including, but not limited to,
11   identifying on an ongoing and real-time basis the specific cell sites activated or accessed by
12   the target cellular telephone number and the signal direction and strength of communications
13   between the relevant cell sites and the target cellular telephone number, and (4) permitting
14   operation and monitoring of the mobile tracking device not to exceed 45 days from the date
15   of this Warrant; (5) directing that agents of the Federal Bureau of Investigation may direct
16   Verizon Wireless to install a pen register to register numbers dialed or pulsed from the above
17   described telephone numbers, to record the date and time of such dialings or pulsings, and
18   to record the length of time the telephone receiver in question is off the hook for incoming
19   or outgoing calls for a period of 45 days; and a trap and trace device, and caller identification
20   on the above described telephone number to capture the incoming electronic impulses which
21   identify the originating number of a wire or electronic communication and the date, time, and
22   duration of such incoming impulses for a period of 45 days; and (6) directing that agents of
23   the Federal Bureau of Investigation may install and use a pen register and/or trap and trace
24   device and/or Caller ID/Caller ID Deluxe, as they may elect, without geographical
25   restrictions, to capture and register outgoing and/or incoming dialed numbers or electronic
26   or other impulses which identify the outgoing and/or incoming originating numbers (call-
27   identifying information) of wire or electronic communications dialed or pulsed from or to
28

4

000837

1   the target telephone, to record the length of time the target telephones are off the hook for
2   incoming or outgoing wire or electronic communications, to be provided call detail record,
3   cell site information to include sector and/or face of the cell tower, timing advance or
4   precision location information, as well as specific paging/traffic RF channels needed to
5   determine the cellular network's registration of the target telephones for a period of 45 days;
6   and such service provider shall initiate a signal to determine the location of the subject's
7   mobile device on the service provider's network or with such other reference points as may
8   be reasonably available and at such intervals and times as directed by the law enforcement
9   agent serving this Court's Order.

10          The United States requests the Warrant and Application be filed under seal.

11          I declare under penalty of perjury that the foregoing is true and correct under 28
12   U.S.C. § 1746.

13          Executed on ___March 3, 2010_____.

14

15                                    DENNIS K. BURKE
                                      United States Attorney
16                                    District of Arizona

17

18                                    ALISON S. BACHUS
                                      Assistant U.S. Attorney

19

20

21

22

23

24

25

26

27

28

5

000838

1         **<u>AFFIDAVIT OF PROBABLE CAUSE</u>**

        Your affiant, SA Lance Leising, being duly sworn, deposes and says to wit:

3         I am a Special Agent (SA) with the Federal Bureau of Investigation (FBI) and am

4 currently assigned to the FBI Phoenix Division's Violent Crime Squad. I have been

5 employed as an FBI SA for approximately 12 years and have investigated hundreds of bank

6 robberies. During dozens of these bank robbery investigations, I have used evidence

7 obtained from the suspects' mobile telephones, specifically cell site tower locations of these

8 telephones, in order to develop probable cause. I am familiar with the facts surrounding the

9 investigation of the "High Country Bandits," a serial robbery crew suspected of committing

10 thirteen bank robberies throughout Arizona, Colorado, Utah, and New Mexico from

11 September 9, 2009 through February 24, 2010. These robberies are connected based on the

12 witness and video evidence of the suspects' descriptions, the style of robberies, the language

13 used by the robber during the robberies, and the method in which the suspects fled from the

14 scenes. The following is a list of the dates and locations of each robbery:

15 **Bank Robbery Events:**

16    8 September 2009    Bank of the West, 1945 Highway 260, Heber, AZ

17    22 September 2009   First Nat. Bank of Durango, 351 Bayfield Center Drive, Bayfield, CO

18    14 October 2009     AZ Central Credit Union, 1948 S. Woodlands Village, Flagstaff, AZ

19    30 October 2009     Country Bank, 3044 N. Glassford Hill Rd, Prescott Valley, AZ

20    10 November 2009   First Community Bank, 19390 Highway 314, Belene, NM

21    25 November 2009   Compass Bank, 613 S. Beeline Highway, Payson, AZ

000839

| 1 | 3 December 2009 | Chase Bank, 5305 S. Superstition Mtn Dr, Gold Canyon, AZ |
| 2 | 4 December 2009 | Compass Bank, 781 E. White Mountain Blvd, Pinetop, AZ |
| 3 | 15 December 2009 | The Village Bank, 1224 S. River Road, St. George, Utah |
| 4 | 22 December 2009 | Bank of the San Juans, 1710 Main St., Durango, CO |
| 5 | 25 January 2010 | Sunwest Bank, 822 N. Humphreys Street, Flagstaff, AZ |
| 6 | 5 February 2010 | Community Banks of Colorado, 1438 E. Main St., Cortez, CO |
| 7 | 24 February 2010 | Sunwest Bank, 822 N. Humphreys Street, Flagstaff, AZ |

8    Of the above thirteen financial institutions, seven of the banks and the credit union are

9    located in the District of Arizona. The other five are located in Colorado, Utah, and New

10    Mexico. All United States currency stolen during these robberies was federally insured by

11    the Federal Deposit Insurance Corporation ("FDIC") or the National Credit Union

12    Administration ("NCUA").

13    I learned the facts contained in this affidavit from my own investigation or from the

14    investigation of other law enforcement officers who are working the case with me. A

15    summary of the facts of each robbery are detailed below:

16    On Tuesday September 8, 2009, at approximately 1600 hours, a male (unknown race),

17    5'7", medium build, wearing a dark ski mask, jacket and gloves entered the Bank of the West,

18    located at 1945 Highway 260, Heber, Arizona. The Suspect brandished a dark, semi-

19    automatic handgun and announced a bank robbery. The Suspect handed a drawstring bag to

20    the tellers, and demanded them to fill the bag with money. After the last teller had put money

21    into the bag, the Suspect took the bag and fled the bank. The subject fled the bank with

2

1   $7,205 of federally insured US Currency.  Witnesses observed the Suspect flee through an

2   open lot south of the bank.  Another witness described seeing two males on a hunting style

3   four-wheeler enter the open lot.  One of the males would walk down near the bank and then

4   return to the four-wheeler.  She said she saw these males do this on at least two occasions

5   prior to the robbery.

6        On Tuesday, September 22, 2009, at approximately 1400 hours, a white or Hispanic

7   male, 5'6", 130-140 pounds, wearing a dark ski mask, sunglasses, jacket, baseball hat and

8   gloves entered the First National Bank of Durango, 351 Bayfield Center Drive , Bayfield,

9   Colorado.  The Suspect brandished a dark, semi-automatic handgun and announced that this

10   was a "holdup."  The Suspect demanded money from two tellers' drawers, specifically

11   demanding both top and bottom drawers, and placed the money in a camouflage bag.  After

12   the last teller had put money into the bag, the Suspect ordered everyone on the ground and

13   fled the bank.  The subject fled the bank with $9961 of federally insured US currency.

14   Witnesses observed Suspect 1 run from the bank and get on the back of a red all-terrain

15   vehicle (ATV) driven by Suspect 2. Suspect 2 was described as a white or Hispanic male in

16   his 40s.  The suspects drove the ATV to a wooded area where witnesses lost them.  Officers

17   later recovered a stolen, red ATV near where the Suspects were last seen.  A canvass of the

18   area developed witnesses who observed two males, described as White or Hispanic, riding

19   a similar ATV in the area.  They were also associated with a grey, full size, 4-door, newer

20   model Dodge or  Ford pick-up truck.

1    On Wednesday, October 14, 2009, at approximately 1551 hours, a white male, 5'2"-

5'5", 160-170 pounds, wearing a dark ski mask, sunglasses, jacket, baseball hat and gloves

3    entered the Arizona Central Credit Union, 1948 South Woodlands Village Boulevard,

4    Flagstaff, Arizona. The Suspect brandished a dark, semi-automatic handgun and announced

5    "Get your hands up!" The Suspect demanded money from the top and bottom drawers of

6    multiple tellers and placed the money in a bag he brought into the bank. After the last teller

7    put the money into the bag, the Suspect ordered everyone on the ground and fled the bank.

8    The Suspect fled the bank with $17,262 of federally insured US currency. Witnesses did not

9    observe how the Suspect left the area.

10    On Friday, October 30, 2009, at approximately 1456 hours, a white male, 5'5", 130-

11    135 pounds, wearing a dark ski mask, sunglasses, jacket, baseball hat and gloves entered the

12    Country Bank, 3044 North Glassford Hill Road, Prescott Valley, Arizona. The Suspect

13    brandished a dark, semi-automatic handgun and demanded money from the top and bottom

14    drawers of multiple tellers. He ordered the tellers to place the money in a bag he brought in

15    the bank. After the last teller put the money into the bag, the Suspect ordered everyone on

16    the ground and fled the bank. The Suspect fled the bank with $14,297 of federally insured

17    US Currency. Witnesses outside the bank reported seeing a man matching the description

18    of the robber run to the parking lot of a Fry's grocery store near the bank. This Suspect ran

19    to an ATV where a second Suspect was waiting for him. The first Suspect jumped on the

20    back of the ATV and the second Suspect quickly drove away, jumping a curb in the process.

21

4

1        On Tuesday, November 10, 2009, at approximately 1453 hours, a white male, 35-45,

2        5'6"-5'8", thin build, wearing a dark ski mask, sunglasses, jacket, baseball hat and gloves

3        entered the First Community Bank, 19390 Highway 314, Belen, New Mexico. The Suspect

4        brandished a dark, semi-automatic handgun and demanded large bills from the bottom

5        drawers of multiple tellers. He ordered the tellers to place the money in a bag he brought in

6        the bank. After the last teller put the money into the bag, the Suspect ordered everyone on

7        the ground and fled the bank. The Suspect fled the bank with $14,915 of federally insured

8        US Currency. Witnesses outside the bank reported seeing a man matching the description

9        of the robber flee on an ATV.

10        On Wednesday, November 25, 2009, at approximately 1552 hours, a white male, 30-

11        50, 5'7"-5'8", thin to medium build, wearing a dark ski mask, sunglasses, jacket, baseball hat

12        and gloves entered the Compass Bank, located at 613 South Beeline Highway, Payson,

13        Arizona. The Suspect approached the victim tellers, brandished a black semi automatic

14        handgun and demanded the money in the top and bottom drawers of multiple victim tellers.

15        He ordered the tellers to place the money in a bag he brought in the bank. After the last teller

16        put the money into the bag, the Suspect ordered everyone on the ground and fled the bank.

17        The Suspect fled the bank with $10,167 of federally insured US Currency. Witnesses

18        observed the Suspect run from the bank and get into the passenger side of a waiting grey van.

19        The van then drove south on the Beeline Highway.

20        A subject matching the description as this Suspect, to include similar clothing, was

21        observed by a witness near the bank two to three hours prior to the robbery. This witness

000843

1    indicated that the Suspect was acting suspicious and was talking on a cellular telephone

2    during the time he was in the area of the bank.

3    On Thursday, December 3, 2009, at approximately 1552 hours, a white male, 40s-50s,

4    shorter, medium build, wearing a dark ski mask, glasses, baseball hat and a glove on his left

5    hand, entered the Chase Bank, 5305 South Superstition Mountain Drive, Gold Canyon,

6    Arizona.  The Suspect pointed a handgun at the teller and demanded all the money in the

7    drawer. The victim teller informed the Suspect that she did not have a cash drawer, only an

8    automatic cash dispenser. The teller entered a code into the dispenser, which automatically

9    dispensed $1000. The Suspect took the money and fled the bank. The suspect was observed

10   getting onto the back of an ATV driven by another subject and fleeing the area.  Witnesses

11   reported seeing the Suspect run towards a nearby business and get on the back of an  ATV,

12   where a second Suspect was waiting for him.  The two suspects fled into the desert on the

13   ATV.

14   On Friday, December 4, 2009, at approximately 1555 hours, a white male, 30's-50's,

15   5'5"-5'8", 130-170 pounds, wearing a dark ski mask, glasses, baseball hat and gloves, entered

16   the Compass Bank located at 781 East White Mountain Blvd, Pinetop, Arizona. The Suspect

17   approached the victim tellers, brandished a black semi-automatic handgun, and demanded

18   the money in the top and bottom drawers of multiple victim tellers. He ordered them to place

19   the money in a bag he had brought in the bank.  After the last teller put the money into the

20   bag, the Suspect ordered everyone on the ground and fled the bank.  The Suspect fled the

21   bank with $3827 of federally insured US Currency.  Witnesses observed the Suspect running

6

1    into a residential area and looking around as if he were lost.  Witnesses soon saw an

2    individual matching the Suspect's description speeding out of the residential area on the back

3    of an ATV driven by a second Suspect.  Officers later followed this escape route and found

4    ATV tracks leading off the road and going through what appeared to be a fresh cut hole in

5    a barbed wire fence separating the Indian Reservation from the town.  The next day, officers

6    followed these tracks for approximately 17 miles northwest until they were lost near Show

7    Low and Linden.

8        On Tuesday December 15, 2009, at approximately 1445 hours, a white male, 5'7"-5'8",

9    slender build, 30-40 years old, wearing a wearing a dark ski mask, sunglasses, jacket,

10   baseball hat and gloves, entered The Village Bank, 1224 South River Road, St. George, Utah.

11   The Suspect approached the victim tellers, brandished a black semi-automatic handgun and

12   demanded "all of the money" from multiple victim tellers.  He ordered the tellers to place the

13   money in a bag he had brought in the bank.  After the last teller put the money into the bag,

14   the Suspect ordered everyone on the ground and fled the bank.  The Suspect fled the bank

15   with $17,200 of federally insured US currency.  Witnesses did not observe how the Suspect

16   left the area.

17       On Tuesday, December 22, 2009, at approximately 1115 hours, a white male, 5'6", 160

18   pounds, 30-40 years old, wearing a wearing a dark ski mask, sunglasses, jacket, hat and

19   gloves, entered the Bank of the San Juans, 1710 Main Street, Durango, Colorado.  The

20   Suspect approached the victim tellers, brandished a black semi-automatic handgun and

21   demanded money from the multiple tellers, specifically asking for the top and bottom

7

000845

1  drawers. The Suspect ordered the tellers to place the money in a bag he had brought in the

2  bank. After the last teller put the money into the bag, the Suspect ordered everyone on the

3  ground and fled the bank. The Suspect fled the bank with $11,000 of federally insured US

4  Currency. Officers followed what they believed to be the Suspect's footprints in the snow

5  as they led away from the bank. The footprints ended abruptly approximately one and a half

6  blocks from the bank in the middle of the roadway, as if the Suspect was picked up by

7  someone in a vehicle.

8       On Monday, January 25, 2010, at approximately 1445 hours, a white male, 5'5"-5'8",

9  medium build, mid-40's, wearing a wearing a dark ski mask, sunglasses, jacket, baseball hat

10  and gloves, entered the Sunwest Bank, 822 North Humphreys Street, Flagstaff, Arizona. The

11  Suspect approached the victim tellers, brandished a black semi-automatic handgun and

12  demanded money from the multiple tellers, specifically asking for the top and bottom

13  drawers. The Suspect ordered the tellers to place the money in a bag he had brought in the

14  bank. After the last teller put the money into the bag, the Suspect ordered everyone on the

15  ground and fled the bank. The Suspect fled the bank with $17,142 of federally insured US

16  Currency. It is unknown how the Suspect fled the area.

17       On Friday, February 5, 2010, at approximately 1510 hours, a white or Hispanic male,

18  5'7"-5'10", 30's-40's, slender build, distinct hazel eyes, wearing a dark ski mask, sunglasses,

19  jacket, grey hooded sweatshirt and gloves, entered the Community Bank of Colorado, 1438

20  East Main Street, Cortez, Colorado. The Suspect approached the victim tellers, brandished

21  a black semi-automatic handgun and demanded money from the multiple tellers, specifically

8

1   asking for the top and bottom drawers.  After the Suspect obtained the money, he ordered

2   everyone on the ground and fled the bank.  The Suspect fled the bank with $6485 of federally

3   insured US currency.  It is unknown how the Suspect fled the area.

4        On Thursday, February 24, 2010, at approximately 1230 hours, a white male, 5'5"-5'8",

5   medium build, mid-40s, wearing a wearing a dark ski mask, sunglasses, jacket, baseball hat

6   and gloves, entered the Sunwest Bank, 822 North Humphreys Street, Flagstaff, Arizona, the

7   same bank that was robbed on January 25, 2010.  The Suspect approached the victim tellers,

8   brandished a black semi-automatic handgun and demanded money from the multiple tellers,

9   specifically asking for the top and bottom drawers.  The Suspect ordered the tellers to place

10  the money in a bag he had brought in the bank.  After the last teller put the money into the

11  bag, the Suspect ordered everyone on the ground and fled the bank.  The Suspect fled the

12  bank with $3349 of federally insured US currency.  It is unknown how the Suspect left the

13  area.

14       After reviewing the witness statements and bank surveillance photographs, investigators

15  immediately identified several consistencies in these robberies that indicate they were

16  committed by the same individuals.  First, the physical description of the main suspect in the

17  bank remains consistent, a white male, short, slender build, 30-50 years old, wearing

18  sunglasses, a dark ski mask, and a baseball hat.  The Suspect also consistently carries a dark,

19  semi-automatic handgun and always wears gloves, sometimes on only one hand.  In addition,

20  based on your affiant's training and experience, a review of the bank surveillance video

9

000847

1   shows that the Suspect has the same mannerisms and appears to be the same person in each

2   robbery.

3          Second, the robberies are consistently conducted in the same manner.  The financial

4   institutions are located in small, rural jurisdictions where bank robberies rarely occur.  As

5   Suspect 1 enters the bank, he always announces to everyone in the lobby area that he is

6   robbing the bank.  He may vary his word slightly, but he always demands everyone's

7   attention, demands money from multiple tellers and specifically demands money from the

8   top and bottom drawers.  Further, Suspect 1 almost always orders everyone to the floor as he

9   leaves the bank.

10          Finally, in the robberies where a witness has observed Suspect 1's getaway, Suspect 1

11   always flees with the assistance of Suspect 2.  With the exception of a couple of the above

12   described robberies, Suspect 1 and 2 flee on an ATV through a remote area and at times to

13   a waiting passenger vehicle.  Further, a witness from the Payson robbery described seeing

14   a person matching the description of the Suspect talking on a cell phone in a nearby parking

15   lot prior to the bank robbery.  Based on your affiant's training and experience, bank robbers

16   who work as a team often conduct surveillance of the victim bank prior to the robbery in

17   order to determine the best bank to rob and the best escape routes to use.

18          Based upon your Affiant's training and experience, when the robbery involves a

19   conspiracy, robbers and co-conspirators tend to use cellular telephones to communicate

20   regarding their plans. Further, when a robbery involves a conspiracy, it is common for

21   robbers and co-conspirators to conduct meetings to discuss their plans and tactics

10

000848

1    immediately prior to committing a robbery, and also to conduct meetings to discuss their

2    success and divide proceeds following a successful robbery.  It is also common for robbers

3    to travel to the location of a planned robbery just prior to the robbery.  With this in mind,

4    investigators obtained a court order, signed by U.S. Magistrate Judge David K. Duncan, for

5    records of all mobile telephones that registered with cell phone towers closest to four of the

6    more remote robbery locations on the dates of the robberies, known colloquially as "cell

7    phone tower dump" records.  Investigators used the four most rural locations in order to

8    minimize the amount of extraneous telephone data that would likely be obtained through

9    such a court order.  Investigators obtained the court order for the following robbery dates and

10    locations:

11              8 September 2009   Bank of the West, 1945 Highway 260, Heber, AZ

12              25 November 2009   Compass Bank, 613 S. Beeline Highway, Payson, AZ

13              3 December 2009   Chase Bank, 5305 S. Superstition Mtn Dr, Gold Canyon, AZ

14              4 December 2009   Compass Bank, 781 E. White Mountain Blvd, Pinetop, AZ

15          Cell phone tower dump records provide a listing of any cell phones that have utilized

16    the cell phone tower for a particular date and time.  They do not pinpoint the exact location

17    of a cell phone; rather, they indicate the general location of the phone based upon the

18    incoming and outgoing signals from the phone registering at a cell phone tower location.

19    The signals are not continuous and are only captured when the phone places or receives a call

20    or text message.  Further, the signals are not continuously captured throughout the entirety

21    of the call, but rather are a snapshot in time, usually the beginning or the end of a phone call

11

000849

1   or text message. The cell phone tower locations therefore indicate the general location of the

2   cell phone and only provide an area accurate to within a few miles.  Hundreds of cell

3   telephones register with these towers each minute. The above-referenced court order resulted

4   in the FBI receiving in excess of 150,000 telephone numbers registering with these towers.

5   However, due to the vast difference in distance and time between the cell towers and the

6   dates of the robberies, investigators believed that it would be extremely unusual for a cell

7   phone number to appear on two or more of the cell phone towers servicing the area of the

8   bank on the exact robbery dates.

9       An analysis of these records was conducted utilizing Microsoft Access by creating a

10   table for each of the phone companies responding to the court orders for each of the dates of

11   the robberies.  These tables were then queried for any cell phone numbers that were common

12   between the different robbery dates and cell tower locations.  Some telephone providers, such

13   as Verizon Wireless, did not have cell towers in all four of the locations.  Verizon Wireless

14   does not have cell towers covering Gold Canyon, Arizona, so Verizon could only provided

15   records for the other three rural locations.  This analysis produced only one telephone number

16   out of the thousands collected that utilized a cell phone tower servicing the area of the bank

17   during the exact date of  three robberies:  Verizon Wireless phone number 928-205-8558.

18   This number utilized a cell phone tower that covers the area of each respective bank on the

19   date of each of the following robberies:  the September 8, 2009 Heber, Arizona robbery, the

20   November 25, 2009 Payson, Arizona robbery and the December 4, 2009 Pinetop, Arizona

21   robbery. On September 8, 2009, 928-205-8558 dialed Verizon Wireless phone number 928-

12

000850

1   242-6915 just prior to the robbery. On November 25, 2009 and December 4, 2009, 928-205-

2   8558 was in contact with Verizon Wireless phone number 928-358-2242 just prior to the

3   robbery. A more in depth analysis of 928-358-2242 revealed that it also utilized a cell phone

4   tower that covers the area of the respective bank on November 25, 2009 in Payson, Arizona,

5   and on December 4, 2009 in Pinetop, Arizona.

6        In summary, the Verizon mobile telephone assigned 928-205-8558 was in the area of

7   all three of the above mentioned banks on the same day that the banks were robbed.  On

8   November 25, 2009 and December 4, 2009, the Verizon mobile telephone assigned 928-358-

9   2242 was also in the area of the banks and was in contact with 928-205-8558. On September

10   8, 2009, while in the area of the bank just prior to it being robbed, 928-205-8558 was in

11   contact with 928-242-6915. Based on your affiant's training and experience, it is likely that

12   whoever is utilizing these three cellular phone numbers, 928-205-8558, 928-358-2242, and

13   928-242-6915, are involved in the above described robberies.

14   **DEVELOPMENT OF SUSPECTS**

15        A Google internet search for phone number 928-205-8558 returned an Arizona

16   Registrar of Contractors webpage that showed this was the phone number for Wapiti Ridge

17   Construction Inc, 7013 Boulder Creek Road, Show Low, Arizona, and listed a Corporate

18   Officer as RONALD MICHAEL CAPITO. A ChoicePoint Clear database check of

19   RONALD CAPITO returned the same address, 7013 Boulder Creek Road, Show Low,

20   Arizona, and provided a date of birth of 02/25/1958, and social security account number of

21   . An Arizona Department of Motor Vehicles records check was conducted on

13

000851

1    Capito, which verified the above information by virtue of his Arizona driver's license.  These

2    records also show that Capito has three vehicles registered in his name, including a metallic

3    grey, 2006 Dodge 1 ton pick-up truck.  Investigators have not been able to observe this truck,

4    but the make and model match the description of the truck seen by witnesses associated with

5    a red ATV prior to the September 22, 2009 robber in Bayfield, Colorado.

6         A Choice Point Clear database check of phone number 928-358-2242 returned the name

7    JOEL GLORE, 787 Club Straight Lane, Show Low, Arizona.  A check of Arizona Motor

8    Vehicle Division records indicated that Arizona driver's license number          belonged

9    to JOEL JAY GLORE, date of birth 09/27/1958, and listed GLORE as 5'7", 165 pounds, with

10   hazel eyes.  This physical description is an almost exact match to the physical description of

11   Suspect 1 who is always inside the bank during the robberies, including the hazel eyes that

12   the victim teller from the February 5, 2010 robbery specifically mentioned.  Based on the

13   physical descriptions alone, investigators believe that GLORE is likely the bank robber

14   (Suspect 1) and he is relying on CAPITO (Suspect 2) to drive the getaway car and/or ATV.

15        Investigators in Colorado cross referenced GLORE'S name and numbers to the evidence

16   obtained in and around the time of the December 22, 2009 robbery in Durango, Colorado.

17   At the time, investigators collected hotel registrations throughout Durango on the day of the

18   robbery.  Investigators reviewed these records and found that the Econolodge, located at

19   2002 Main Ave, Durango, Colorado, provided the following hotel registration information

20   for Joel J. GLORE:  GLORE checked into the Econolodge Hotel on 12/21/2009 and checked

21   out on 12/22/2009, the exact day the Bank of the San Juans was robbed.  He provided a Visa

14

000852

1    credit card number in his name in case of damages, but paid for the room in cash.  Hotel

2    employees made a notation that the hotel room was for two adults.  GLORE also provided

3    an address of 842 Joker's Wild, Show Low, AZ 85901 and telephone number 928-358-2242,

4    the same number identified as being in close proximity to the Payson and Pinetop, Arizona

5    robberies.  The hotel's policy is to verify the owner of the credit card against a photo

6    identification.  The Econolodge is located approximately three blocks north of the Bank of

7    the San Juans.  Video obtained from a nearby gas station showed Suspect 1 approaching the

8    bank from the north.  Therefore, not only was GLORE and a likely associate of his present

9    in the area of a Colorado robbery in this series, but his phone was also in the area of two

10    Arizona bank robberies in this series and contacting CAPITO's telephone.

11    Investigators have not been able to locate any information regarding telephone number

12    928-242-6915 other than it is a Verizon Wireless number as well.

13    Your affiant contacted Verizon on March 2, 2010 and confirmed that all three phone

14    numbers are still active accounts and in use.

15    Investigators mapped the Show Low, Arizona addresses for CAPITO and GLORE and

16    discovered that they were in the same residential neighborhood and were in close proximity

17    to Highway 260.  The first bank robbery believed to be part of this series of robberies was

18    the September 8, 2009, bank robbery at Bank of the West, 1945 Highway 260, Heber,

19    Arizona.  However, this bank is approximately 31 miles from these residences and could not

20    be serviced by the same cell tower.  Therefore, CAPITO and GLORE were not simply

21    making calls from their homes when their phones registered off of the cell towers.

15

000853

1   Subsequent robberies in the series have all been farther away from the residences than this

2   initial robbery.

3       A review of the Arizona Supreme Court database revealed that RONALD CAPITO

4   received a traffic ticket for improper riding on a motorcycle/all-terrain vehicle from the

5   Snowflake Justice Court on September, 2009. Investigators contacted the Arizona Game and

6   Fish Officer who wrote the ticket. The Officer advised that on September 4, 2009, just four

7   days prior to the bank robbery in Heber, he observed an individual driving a camouflaged

8   ATV east along State Highway 260 near the west end of Heber, Arizona. This ATV was a

9   one-person ATV and the driver was carrying a passenger on the back of the ATV. The

10  Officer stopped the ATV for Riding Double on an ATV Against Manufacturer's

11  Specifications (ARS 28-892) and identified the driver as RONALD M. CAPITO, DOB:

12  2/25/1958, and the passenger as JOEL J. GLORE, DOB: 9/27/1958. CAPITO admitted that

13  he had no license plate and the ATV was not registered. This incident shows that CAPITO

14  and GLORE have knowledge of and access to ATVs and is further evidence of the likelihood

15  that CAPITO acts as GORE'S get-away driver. Additionally, this incident took place within

16  two miles of the first bank robbery in this series and just four days prior to the robbery.

17  Finally, the camouflaged color of the ATV matches the witnesses' descriptions of a

18  suspicious ATV ridden by two men in the area of the bank prior to the Heber robbery.

19  **CRIMINAL HISTORY**

20  RONALD MICHAEL CAPITO, DOB 02/25/1958, SSAN         , has a

21  criminal history maintained and available from Colorado, Utah, and Arizona. CAPITO's

16

1    criminal history includes: Colorado arrests for assault, carrying a concealed weapon, and

   disorderly conduct; Utah arrests for contempt of court, theft by deception, and larceny; and

3    Arizona arrests for aggravated assault, consumption of an alcoholic beverage in a public

4    place, assault, fraud, failure to appear, forgery, fraud schemes, and theft.

5        JOEL JAY GLORE, DOB 09/27/1958, SSAN        has a criminal history

6    including Arizona arrests for dangerous drugs, possession of drug paraphernalia, fraud,

7    carrying a concealed weapon, trespassing, and theft.

8        Investigators believe that locating the mobile telephones assigned telephone numbers

9    928-205-8558 and 928-358-2242 would likely lead to locating CAPITO and GLORE, allow

10    investigators to monitor their movements as they plan further robberies, and identify

11    locations where they are maintaining evidence of the bank robberies, such as currency,

12    clothing, ATVs and weapons.  Further, the location of these cellular telephones would

13    provide evidence of the Suspects' likely whereabouts at the time of any future bank robberies,

14    which is particularly important given the geographic diversity of where they are striking.  In

15    addition, based on their pattern, they are expected to strike again in the near future.

16        I hereby certify that the information likely to be obtained by use of call detail, global

17    position satellite and cell site information, for the above-captioned telephones is relevant and

18    material to an ongoing criminal investigation, pursuant to 18 U.S.C. § 2703.

19        I also request that Verizon Wireless, and any other local, long distance or wireless

20    carrier be ordered to furnish agents of the Federal Bureau of Investigation with the name,

21    address, telephone toll billing records, telephone number or other subscriber number or

000855

1    identity, length of service to the subscriber or customer of such service, and the types of

2    services utilized by the subscriber or customer, for those telephone numbers, names, or

3    addresses identified in the written body of this Court's Warrant, and caller identification

4    installed at the direction of this Court's Warrant, so that investigators may identify other

5    associates of the subjects.

6         I do not request, nor am I seeking to obtain the contents of any wire or electronic

7    communications, namely, the contents of any conversations (incoming or outgoing) over the

8    Targeted Cellular Telephones (928-205-8558 and 928-358-2242).

9         For these reasons your affiant believes that probable cause exists in this matter and

10    requests the Court to enter an order authorizing the Federal Bureau of Investigation to obtain

11    cellular telephone call detail records with cell site location information and use and monitor

12    a pen register, a trap and trace device, caller identification, global position system and a

13    mobile pin tracking device, for a period not to exceed forty five (45) days from the date of

14    the Court's order for cellular telephone numbers 928-205-8558 and 928-358-2242.

Dated this _3rd_ day of ___March___, 2010.

Lance Leising
Special Agent, FBI


Subscribed and sworn to and before me this 3rd day of March, 2010.

DAVID K. DUNCAN
United States Magistrate Judge

18

COPY

UNITED STATES DISTRICT COURT

DISTRICT OF ARIZONA

| IN THE MATTER OF THE APPLICATION OF THE UNITED STATES OF AMERICA FOR AN ORDER AUTHORIZING THE INSTALLATION AND USE OF A MOBILE TRACKING DEVICE AND A PEN REGISTER, TRAP AND TRACE DEVICE, INCLUDING CALLER IDENTIFICATION FEATURE ON CELLULAR TELEPHONE NUMBERS (928) 205-8558 AND (928) 358-2242 | No. 10-612mB<br><br>**WARRANT FOR A TRACKING DEVICE AND ORDER FOR INSTALLATION AND USE OF A PEN REGISTER, TRAP AND TRACE DEVICE, INCLUDING CALLER IDENTIFICATION FEATURE**<br><br>**(Filed Under Seal)** |
|---|---|

This matter having come before the Court pursuant to an application under Title 18, United States Code, Section 3117 by Alison S. Bachus, an attorney for the government, which application requests a warrant under Title 18, United States Code, Section 3117 and Fed. R. Crim. P. 41 authorizing the installation and use of a mobile tracking device on cellular telephone numbers (928) 205-8558 and (928) 358-2242 (the "target cellular telephone numbers"), as well as an Order pursuant to 18 U.S.C. §§ 3122, 3123, and 3127(3) and (4) authorizing the installation and use of a pen register, trap and trace device, and caller identification service on the target cellular telephone numbers. The Court finds that there is probable cause to believe that the persons using the target cellular telephone numbers are involved with possible violations of Title 18, U.S.C. Sections 2113(a) and (d) and 924(c)(1)(A).

1    **IT IS ORDERED**, pursuant to 18 U.S.C. § 3117, that Verizon Wireless and/or agents

2    of the Federal Bureau of Investigation may install and use a mobile tracking device on the

3    target cellular telephone numbers described above; and

4    **IT IS FURTHER ORDERED** that pursuant to Fed. R. Crim. P. 41(e)(2)(B)(I) any

5    installation of a mobile tracking device, if applicable, shall be completed within 10 calendar

6    days of the date of the Warrant, such installation authorized only during daytime hours; and

7    **IT IS FURTHER ORDERED** that pursuant to 18 U.S.C. §§ 2703(c)(1)(B) and (d),

8    Verizon Wireless shall disclose, on an ongoing and real-time basis, the location of cell site

9    and sector/face data (physical address) at call origination (for outbound calls), call

10   termination (for incoming calls) and, if reasonably available, during the progress of a call

11   over each of the target telephone numbers; and

12   **IT IS FURTHER ORDERED** that pursuant to Fed. R. Crim. P. 41(e)(2)(B) the

13   mobile tracking may be operated, used and monitored for no more than forty-five (45) days

14   from the date of the Warrant; and

15   **IT IS FURTHER ORDERED** that pursuant to Fed. R. Crim. P. 41(e)(2)(B) the

16   tracking device warrant shall be returned to a United States Magistrate Judge; and

17   **IT IS FURTHER ORDERED** that this authorization shall apply not only to the

18   above-described telephone, but also any changed telephone numbers assigned to the

19   instrument bearing the same ESN/IMSI/UFMI as the target telephone numbers within the

20   forty-five (45) day period; and

21   **IT IS FURTHER ORDERED** that pursuant to 18 U.S.C. § 3117(a) the authorization

22   to install and use a mobile tracking device be without geographic limits; and

23   **IT IS FURTHER ORDERED** that pursuant to Fed. R. Crim. P. 41(f)(2)(B) within

24   10 calendar days after the use of the tracking device has ended, the officer executing the

25   warrant shall return the warrant to a United States Magistrate Judge; and,

26   **IT IS FURTHER ORDERED**, directing Verizon Wireless, and any other local, long

27   distance or wireless carrier to forthwith furnish agents of the Federal Bureau of Investigation

28   with the name, address, telephone toll billing records, telephone number or other subscriber

2

1   number or identity, length of service to the subscriber or customer of such service, and the

2   types of services utilized by the subscriber or customer, for those telephone numbers, names,

3   or addresses identified in the written body of this Warrant, and caller identification installed

4   at the direction of this Warrant; and

5       **IT APPEARING** that a pen register, a trap and trace device, and caller identification

6   installed on cellular telephone numbers (928) 205-8558 and (928) 358-2242 and that the

7   telephone numbers dialed or pulsed from (928) 205-8558 and (928) 358-2242 are relevant

8   to an ongoing criminal investigation of the specified offense or offenses.

9       **IT IS FURTHER ORDERED,** pursuant to 18 U.S.C. § 3123, that agents of the

10  Federal Bureau of Investigation may direct Verizon Wireless to install a pen register to

11  register numbers dialed or pulsed from the above described telephone numbers, to record the

12  date and time of such dialings or pulsings, and to record the length of time the telephone

13  receiver in question is off the hook for incoming or outgoing calls for a period of 45 days;

14  and a trap and trace device, and caller identification on the above described telephone

15  number to capture the incoming electronic impulses which identify the originating number

16  of a wire or electronic communication and the date, time, and duration of such incoming

17  impulses for a period of 45 days;

18      **IT IS FURTHER ORDERED,** that pursuant to 18 U.S.C. §§ 2703(c)(1)(B) and (d),

19  that agents of the Federal Bureau of Investigation may install and use a pen register and/or

20  trap and trace device and/or Caller ID/Caller ID Deluxe, as they may elect, without

21  geographical restrictions, to capture and register outgoing and/or incoming dialed numbers

22  or electronic or other impulses which identify the outgoing and/or incoming originating

23  numbers (call-identifying information) of wire or electronic communications dialed or pulsed

24  from or to the target telephones, to record the length of time the target telephones are off the

25  hook for incoming or outgoing wire or electronic communications, to be provided call detail

26  record, cell site information to include sector and/or face of the cell tower, timing advance

27  or precision location information, as well as specific paging/traffic RF channels needed to

28  determine the cellular network's registration of the target telephone for a period of 45 days;

000859

1   and such service provider shall initiate a signal to determine the location of the subject's

2   mobile device on the service provider's network or with such other reference points as may

3   be reasonably available and at such intervals and times as directed by the law enforcement

4   agent serving this order; and

5        **IT IS FURTHER ORDERED**, pursuant to Title 18, U.S.C. § 3123(d), that this Order

6   and the Application be sealed until otherwise ordered by the Court, and that the service

7   providers, including but not limited to Verizon Wireless, shall not disclose the existence of

8   the warrant or mobile tracking device, or the existence of the investigation to the listed

9   subscriber, or to any other person, unless or until otherwise ordered by the Court.

10  Dated this ___3RD___ day of ___March___, 2010. , 1:30 p.m.

11

12

13  DAVID K. DUNCAN
    United States Magistrate Judge

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

4